# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| CONCATEN, INC.<br><br>       Plaintiff,<br><br>v.<br><br>AMERITRAK FLEET SOLUTIONS, LLC,<br><br>       Defendant. | Civil Case No. 1:14-cv-00790-PAB-BNB<br>Judge Philip A. Brimmer<br><br><br>**DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** |

## MOTION

Defendant AmeriTrak Fleet Solutions, LLC ("AmeriTrak") hereby moves the Court for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) on Plaintiff Concaten, Inc.'s ("Concaten") claims for patent infringement. Concaten asserts five patents related to the coordination of snow maintenance vehicles. The asserted claims are invalid under 35 U.S.C. § 101 because they are directed to abstract ideas about collecting data and transmitting it over cellular networks without reciting any separate inventive concept or something more than generic computer limitations. Accordingly, the asserted claims are invalid and Concaten's patent infringement allegations should be dismissed.

## INTRODUCTION

In June, the Supreme Court issued its decision in *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, --- U.S. ---, 134 S.Ct. 2347 (2014), reiterating that an abstract idea does not qualify for patent protection merely because a party has reduced the idea to a series of routine steps that are implemented using a computer. *Id.* at 2357. The Court also emphasized that reciting "generic computer components

configured to implement [an abstract] idea" is insufficient to establish eligibility under § 101. *Id.* at 2360. Since that decision, courts are regularly applying *Alice* and invalidating patent claims.[1]

Concaten's asserted patents deserve the same fate. Concaten alleges that its patents cover a wide range of abstract computer-based concepts, including: MDSS, AVL, GPS, MDC, MDT and functionally equivalent technologies. (Am. Compl. at ¶¶ 11-12). And the 22 independent claims, all of which are asserted, describe only functional steps that are abstract ideas such as collecting information from a vehicle and transmitting it over monitored network connections, or providing a map or instruction to a snow maintenance vehicle. These abstract ideas are not patentable subject matter, and Concaten's infringement claims should therefore be dismissed.

## BACKGROUND OF THE PATENTS

Concaten alleges that AmeriTrak's products and services infringe five patents related to a maintenance decision support system, including the '509 patent and four continuation patents ('705,

---

[1] *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) (method for displaying advertisement in exchange for viewing copyrighted media for free online); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (transaction performance guaranty); *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014) (device profile and a method for creating a device profile within a digital image processing system); *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs.*, 2014 U.S. Dist LEXIS 172567 (D. Del. Dec. 15, 2014) (conventional business practices implemented on generic computers); *Wolf v. Capstone Photography, Inc.*, 204 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28, 2014) (computer-automated selection and ordering of event photographs); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, --- F.Supp.3d ---, 2014 WL 5430956 (E.D. Va. Oct. 24, 2014) (creation of query-able databases, and correlation of information to enhance other information); *Cogent Medicine, Inc. v. Elsevier Inc.*, --- F. Supp. 3d ---, 2014 WL 4966326 (N.D. Cal. Sept. 30, 2014) (computerized manner of maintaining and searching a library of information); *McRO, Inc. v. Activision Pub., Inc.*, 2014 WL 4759953 (C.D. Cal. Sept. 22, 2014) (rules-based animation practice); *Open Text S.A. v. Alfresco Software Ltd.*, 2014 WL 4684429 (N.D. Cal Sept. 19, 2014) (computerized method of interacting with customers to promote marketing and sales); *Eclipse IP LLC v. McKinley Equipment Corp.*, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) (asking people to do things or go places); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, --- F.Supp.2d ---, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) (currency/loyalty award credit exchange); *Comcast IP Holdings I, LLC v. Sprint Comm'ns Co. L.P.*, --- F.Supp.2d ---, 2014 WL 3542055 (D. Del. July 16, 2014) (conditional decision-making); *DietGoal Innovations LLC v. Bravo Media LLC*, 2014 WL 3582914 (S.D.N.Y. July 8, 2014) (computerized meal-planning process).

'473, '037, and '769). (Am. Compl. at Exs. 1-5). Concaten describes this maintenance decision support system as "a computer-based system that, among other potential and/or actual applications, provides State transportation departments' winter maintenance personnel with specific weather forecast information and treatment recommendations." (Am. Compl. at ¶ 11.) All of the patents, which generally share a common specification, are "directed generally to collecting types of information in vehicular and roadside applications and transmitting at least some of the collected information to a remote server." (Summary of the Invention, col. 2, l. 34-37.) Concaten has indiscriminately asserted all 22 independent claims in the five patents in suit.

The '509 parent patent is titled "Smart Modem Device for Vehicular and Roadside Applications." The patent does not claim any actual device or explain how to make one, but instead merely claims the system and method of the functions such a device might perform. Claim 1 of the patent is representative:

1. A data collection and transmission system, comprising:

at least one of a sensor and user interface operable to collect information regarding vehicle state and/or vehicle occupants;

at least one slot operable to receive a selected network card, the at least one slot being configured to receive cards of multiple private and/or public networks;

a plurality of sets of connection managers and monitors corresponding to different types and/or origins of network cards, each set comprising at least one connection manager to interact with the corresponding network card in establishing a connection with the corresponding wireless network and connection monitor to monitor a state of the connection and at least one of the connection manager and monitor of a first set being different than a corresponding at least one of the connection manager and monitor of a second set; and

a system manager operable to determine a type and/or origin of network card and select and cause execution of the corresponding connection manager and monitor set to set up a connection with the network corresponding to the determined type and/or origin of network card.

In plain language, claim 1 is directed at the abstract idea of collecting information from a vehicle and transmitting it over various monitored network connections. The '509 patent does not

claim to have invented, or to have improved the operation of, any technologies or combination of technologies, but instead is expected to "utilize[] advances from the programing and computing component industries to create a modular modem that its users can much more easily program and integrate into new or existing networks." (col. 7, l. 8-11.) It does not, however, enable these "advances" or explain who made them or where they came from. The Smart Modem Device is in reality nothing more than a generic computer, which the inventors suggest could be programed (although they do not specify how) to implement an abstract idea.

While the '509 patent is the parent, the majority of the asserted claims are variants of Claim 1 in the '705 patent. The '705 patent (titled the "Maintenance Decision Support System and Method") is a continuation of the '509 patent, and similarly provides a method and system "in which maintenance vehicles collect information from sensors and operators, forward the collected information to a server, and, in response, receive maps and operator instructions." (Abstract.)

In 2011, the '705 patent was the subject of a reexamination petition arguing that the patent should be invalidated under 35 U.S.C. § 102 and § 103 in view of the prior art submitted along with the petition.[2] Although the USPTO denied the petition based on the prior art presented, the Director of the office's Central Reexamination Unit noted that the only limitation that was not explicitly found in the prior art presented was the step of "providing a map or instruction to the snow maintenance truck operator." (9/30 Decision at p. 5, Affidavit of L. Hansen Ex 1.)

Based on the reexamination (which did not, and could not, consider § 101 eligibility), it is evident that the claims of the '705 patent are drawn to the patent-ineligible abstract idea of sending a

---

[2] The Court may consider the USPTO's reexamination decision in ruling on a motion for judgment on the pleadings. The prosecution history of a patent, including all reexamination proceedings, are part of the "intrinsic record" of a patent. *Markman v. Westview Instr., Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995). As such, the prosecution history is incorporated by reference in the complaint as part of the patents themselves. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (observing that a court may consider documents that the complaint incorporates by reference on a motion to dismiss).

map or operating instruction from a central server to a snow maintenance vehicle. Claim 1 is again representative:

1. A method, comprising:

(a) receiving over a wireless cellular network, from a plurality of snow maintenance vehicles and by a server, a plurality of sets of collected information, each of the collected sets of information comprising a snow maintenance vehicle physical location and at least one of weather and road conditions in an area of the respective snow maintenance vehicle;

(b) processing, by the server, the received collected information to

    (i) provide a map associated with a physical location of a selected snow maintenance vehicle and

    (ii) determine an instruction for an operator of the selected snow maintenance vehicle; and

(c) providing, over the wireless cellular network, the map and an operator instruction to the selected snow maintenance vehicle of the plurality of snow maintenance vehicles,

    wherein the map is visually displayed, by a touch screen monitor, to the operator and

    wherein the operator instruction to the selected snow maintenance vehicle operator comprises one or more of a dispatch command, an alarm based on a temporal trend in weather conditions, an alarm based on a difference in weather conditions, an alarm based on a temporal trend in road conditions, an alarm based on a difference in road conditions, a snow plow setting, a mixture of materials being applied to a road surface, and an amount of materials being applied to the road surface.

This claim, consistent with all the independent claims in this patent, is simply describing the idea that one could collect information from and send information to a snow plow. The patent does not invent or improve upon the actual components. Instead, the claim merely sets forth these functional steps based on generic existing technology in order to implement the idea of providing maps and instructions to snow maintenance vehicles based on data transmitted by the vehicle itself.

The '473, '037, and '769 patents similarly claim variations of collecting information from and sending information to snow plows.[3] The patents claim abstract ideas. The asserted claims in the

---

[3] Mindful of the Court's page limitations, and in an effort to avoid tediously reciting each of the 22 claims that Concaten indiscriminately asserts, AmeriTrak focuses its analysis on claim 1 of the '509 patent and claim 1 of the '705 patent, which are representative of the claims asserted in all five patents. AmeriTrak believes the analysis of these two claims demonstrates the invalidity of the asserted patents. It will, however, present additional briefing if the Court desires.

'473 patent and the '769 patent are nearly indistinguishable from the idea of providing a map or instructions claimed in the '705 patent. The '037 patent adds to the idea of using the data collected from the snow maintenance vehicle to generate a weather forecast. None of the patents claim to have invented, or to have improved the operation of, any technologies or combination of technologies. None recite any specific hardware or software to process the information transmitted. They only offer variations on the abstract ideas claimed in the '705 patent.

## ARGUMENT

Patent-eligible subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. But "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). The fundamental concern underlying this limitation is that "[l]aws of nature, natural phenomena, and abstract idea are the basic tools of scientific and technical work," and "monopolization of those tools through the grant of a patent might tend to impede innovation more than it would promote it." *Alice Corp.*, 134 S. Ct. at 2354. This exclusion applies even if the particular law of nature or abstract idea at issue is narrowly drawn. *Mayo*, 132 S. Ct. at 1303.

The Court articulated a two-step process for determining whether a claim was directed to patent-eligible subject matter. *Alice Corp.*, 134 S.Ct. at 2355. At step one, a court must evaluate the claims on their face to determine to which concept the claims are drawn. *Id.* at 2356. At step two, a court "search[es] for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 2355 (internal quotation marks omitted).

Concaten's patents fail both steps of this test because they are directed at the abstract ideas of sending data from a snow maintenance vehicle over a wireless cellular network to a central server, and the idea of sending maps or instructions over a wireless network to an operator of a vehicle

from that central server. The asserted claims offer no inventive concept that transforms these ideas into patentable subject matter, and instead recite generic computer limitations that are insufficient to qualify for eligibility under § 101.

## I.     Legal Standard

A motion brought pursuant to Fed. R. Civ. P. 12(c) is reviewed under a similar standard as a motion brought pursuant to Fed. R. Civ. P. 12(b)(6). *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1284 (D. Colo. 2009). Whether a claim is directed at patent-eligible subject matter is a question of law, which may be resolved on a motion for judgment on the pleadings. *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014). It is not necessary, for example, for the Court to construe the asserted claims of a patent prior to determining subject matter eligibility.[4] The Federal Circuit "perceive[s] no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp. Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) *see also CyberFone Sys., LLC v. CNN Interactive Group, Inc.*, 558 Fed. Appx. 988, 992 n.1 (Fed. Cir. 2014) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility."). A motion for judgment on the pleadings is a particularly appropriate stage to determine whether a patent has passed the threshold of § 101. Indeed, "addressing section 101 at the outset of litigation will have a number of salutary effects," such as conserving judicial resources and avoiding staggering litigation costs associated with vexatious infringement suits. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718 (Fed. Cir. Nov. 14, 2014) (Mayer, J., concurring).

---

[4] Since *Alice*, courts are regularly invalidating patents under § 101 before claim construction. *See, e.g.*, *Ultramercial*, 772 F.3d at 719; *Cogent Med., Inc. v. Elsevier Inc.*, 2014 WL 4966326, at *3 (N.D. Cal. Sept. 30, 2014); *Open Text S.A. v. Alfresco Software Ltd.*, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014); *Eclipse IP LLC v. McKinley Equip. Corp.*, 2014 WL 4407592, at *5 (C.D. Cal. Sept. 4, 2014); *Genetic Tech. Ltd. v. Laboratory Corp. of America Holdings*, 2014 WL 4379587, at *6 (D. Del. Sept. 3, 2014); *DietGoal Innovations LLC v. Bravo Media LLC*, --- F. Supp. 2d ---, at 2014 WL 3582914, at *15 (S.D.N.Y. July 8, 2014).

Furthermore, there is no presumption that an issued patent has met the requirement of subject matter eligibility. *See id.* at 720-21. This makes sense "[b]ecause the PTO has for many years applied an insufficiently rigorous subject matter eligibility standard." *Id.* at 720 "Indeed, in the USPTO's view, *Alice*'s embrace of the *Mayo* framework for abstract idea cases was such a significant change or clarification that it has withdrawn issued notices of allowance—that is, stopped patents that had made it all the way through examination and were about to issue—'due to the presence of at least one claim having an abstract idea and no more than a generic computer to perform generic computer functions.'" *McRO, Inc. v. Activision Pub., Inc.*, 2014 WL 4759953, at *5 n.7 (C.D. Cal. Sept. 22, 2014) (quoting Commissioner of Patents, Peggy Focarino).

## II. Concaten's Asserted Claims Are Directed to Ineligible Subject Matter

### A. The '509 Patent Is Directed to the Abstract Idea of Collecting Information from a Vehicle and Transmitting it

"*Alice* . . . categorically establish[ed] a clear rule that had been previously subject to debate: 'mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.'" *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 2014 WL 5430956, at *5 (E.D. Va. Oct. 24, 2014) (citation omitted). The '509 patent does not claim any specific device that improves the operation of any technology, but instead describes the functional steps of a generic mobile computer collecting data from a snow maintenance vehicle and transmitting that data over monitored network connections. The claims are, therefore, invalid.

Since *Alice Corp.*, courts are regularly invalidating patents like Concaten's that simply mask an abstract idea by reciting it through a series of technical steps to be performed on a generic computer. In *Amdocs*, the court invalidated a series of patents related to software which allow a telecommunications provider to track customer usage of computer network devices. Like Concaten's patents, the asserted claims in *Amdocs* were drafted in purely functional terms. In that case, for example, patent '065 was directed to the abstract idea of "correlating and enhancing

network usage data." *Id.* at *5-6. Patent '510 was directed to the abstract idea of "creation of a database of network usage information that can be queried to retrieve information on the collection of network usage information." *Id.* at *8. Patent '797 was directed to the abstract idea of "creation of a single record for accounting purposes from information collected from two of the specified services." *Id.* at *9. Patent '984 was directed to the abstract idea of the "creation of a 'queryable' database of network usage information." *Id.* at *10. Although these claims did not address an easily summarized business principle such as "hedging" in *Bilski* or "intermediated settlement" in *Alice Corp.*, the Eastern District of Virginia correctly observed that the claims were abstract because they recited only the broad function of performing an idea.

Indeed, "[a]n abstract idea is the extreme case of functional language." *McRO, Inc. v. Activision Pub., Inc.*, 2014 WL 4759953, at *9 (C.D. Cal. Sept. 22, 2014). In *McRO, Inc.*, the Central District of California invalidated a patent that attempted to preempt the field of rules-based automatic lip synchronization for computer animation. *Id.* The court noted that, although drafted in a technical manner that *appeared* to offer tangible technological processes, the asserted claims mostly described steps already present in prior art, and the only new step claimed in the patent was the abstract idea of using a rules-based approach to complete a task that had traditionally been performed manually by an artist. *Id.* The court warned that "'the vice of a functional claim exists not only when a claim is 'wholly' functional, if that is ever true, but also when the inventor is painstaking when he recites what has already been seen, and then uses conveniently functional language at the exact point of novelty.'" *Id.* (quoting *Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 371 (1938)).

In another example, the District of Delaware recently parsed through a technical-sounding functional claim to demonstrate the simple idea masked behind its drafting. In *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, --- F.Supp.2d ---, 2014 WL 3542055 (D. Del. July 16, 2014), the court reviewed under § 101 a claimed method of "receiving a request from an application to provide to the application service on a telephony network; and determining whether a telephony parameter

associated with the request requires acceptance of a user prompt to provide to the application access to the telephony network," and determined the claim recited nothing more than the abstract idea of making a decision. *Id.* at at *2-3. The court noted that a technological limitation in the claim, such as being drawn to a "telephony network," would not distract the court from its task at step one, which is merely "to determine whether and what is 'the abstract idea at the heart' of the claim." *Id.* at *3.

These courts note that claims drafted in functional language, like the claims asserted by Concaten, are dangerous in that they artfully give the "impression of tangibility" or specificity, while in reality claim much more. *McRO, Inc.*, 2014 WL 4759953 at *12. The Supreme Court has "'long warn[ed] . . . against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art.'" *Id.* (quoting *Alice Corp.*, 134 S. Ct. at 2351). Despite the recitations in claim 1 of the '509 patent of discrete functions artfully drafted in technical terms, the heart of Concaten's patent is the abstract idea of collecting data from a snow maintenance vehicle and transmitting that data over monitored network connections. As *Alice Corp.* demonstrates, significantly more is required from the claim for it to be eligible under § 101.

**B.    The Continuation Patents are Directed to the Abstract Idea of Sending a Map or Instructions to a Snow Plow over Wireless Cellular Networks**

The claims in the '705 patent, as well as the other continuation patents, are directed to the abstract idea of receiving information from one or more snow maintenance vehicle and then providing that vehicle with a map or an instructions over a wireless cellular network. As with their parent patent, these patents fail stage one of the *Alice Corp.* test.

Moreover, not only are the claims directed to abstract ideas as drafted, but the reexamination demonstrates that the only (purportedly) novel aspect of the '705 patent in its entirety was the idea of "providing a map or instruction to the snow maintenance truck operator." (9/30 Decision at p. 5, Affidavit of L. Hansen at Ex. 1.) This means that the '705 patent and its continuations are especially susceptible to § 101 invalidity.  When viewed in the context of the prior art, the claims of the '705

patent do not combine to create any inventive concept beyond the idea of providing a map or instructions to snow maintenance vehicles. *See McRO, Inc.*, 2014 WL 4759953, at *9-11 (noting that, when viewed in isolation, the asserted claims did not seem abstract, but when viewed in the context of prior art, the only inventive step was an abstract idea invalid under § 101). The '705 patent, and the other continuation patents, are drawn to ineligible subject matter.

### III. The Asserted Claims Do Not Add "Significantly More" to Abstract Ideas Sufficient to Confer Patent Eligibility

Where, as here, the claims at issue are directed to an abstract idea, the Court must next determine whether the claims do **significantly more** than simply describe that idea. This second step of the Court's analysis focuses on whether the asserted claims contain an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S.Ct. at 2355 (internal quotation marks omitted). A claim directed to an abstract idea does not qualify for section 101 eligibility by "merely require[ing] generic computer implementation." *Id.* at 2357. "'Simply appending conventional steps, specified at a high level of generality,' [is] not 'enough' to supply an 'inventive concept.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1300).

#### A. Concaten's Patents Recite Generic Computer Implementation

Concaten's patents fail to add anything to the abstract idea of sending data from a snow maintenance vehicle over a wireless cellular network to a central server or the idea of sending maps or instructions over a wireless network to an operator of a vehicle from that central server. The claims do not recite any new or improved computer technology or provide new physical components for existing technology. To the contrary, the claims merely recite generic components such as "sensors" and a "touch screen monitor" and a "server" and a "database." These fall squarely within the category of generic computer components that courts have held to be insufficient under § 101. *See, e.g.*, *SmartGene, Inc. v. Advanced Biological Labs.*, 555 Fed. Appx. 950, 955 (Fed. Cir. 2014)

("The claim does not purport to identify new computer hardware: it assumes the availability of physical components for input, memory, look-up, comparison, and output."); *DietGoal Innovations LLC v. Bravo Media LLC*, 2014 WL 3582914, at *15 (S.D.N.Y. July 8, 2014) (claims ineligible where they "merely describe generic computer components that can be found on any general-purpose computer, such as a user interface, database, or visual display.").

Try as it might, Concaten cannot claim that by naming its '509 patent a "Smart Modem Device," it has somehow implemented its abstract idea on a unique device. Rather, the patents must actually describe something inventive. For example, The District of Delaware recently invalidated a patent directed at conventional business practices used by bankers despite a plaintiff's argument that the abstract ideas were embodied in a "special purpose computer." *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs.*, 2014 U.S. Dist LEXIS 172567 at *22 (D. Del. Dec. 15, 2014). The court noted that "[t]he computer components are being employed for basic functions, including storage, transmitting and receiving information, and, the court concludes that such components are not 'specific' or 'special purpose' computers." *Id.* In this case, Concaten's recital of generic computer components does not impose any meaningful limitation on the scope of the idea of collecting and transmitting information from a vehicle or processing information and providing a map or instruction from a central server. The patents do not claim any specific implementation of actually transmitting or processing that information, or identify any specific software that would limit how that transmission or processing would be performed.

The fact that Concaten's patents describe the transmission of data over a wireless cellular network or receive maps or instructions or forecasts over a wireless cellular network is insufficient to establish the "significantly more" requirement in *Alice Corp.* The Federal Circuit recently found a similar patent invalid as an abstract idea despite the invocation of machine-readable media encoded to perform steps of the idea. The court observed:

> That a computer receives and sends the information over a network—with no
> further specification—is not even arguably inventive. The computers in *Alice* were
> receiving and sending information over networks connecting the intermediary to the
> other institutions involved, and the Court found the claimed role of the computers
> insufficient.

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (2014); *see also Amdocs*, 2014 WL 5430956, at *9

(noting that patent did not offer an inventive concept by reciting functions that were "conventional

methods of computer network communication").

The '509 patent mentions components of a smart modem device identified as "connection

managers," "connection monitors" and a "system manager," which all monitor the network

connections used to transmit information, but the patent does not claim any hardware or software

that would be used to achieve these functions. The claim offers no inventive concept beyond the

idea that the network connections should be monitored and managed. This is no different than the

method claims in *Alice Corp.* that invoked "the use of a computer to create electronic records, track

multiple transactions, and issue simultaneous instructions," "electronic recordkeeping," and "the use

of a computer to obtain data, adjust account balances, and issue automated instructions." 134 S. Ct.

at 2359. Similarly, the system claims in *Alice Corp.* were "no different," and invoked a "'data

processing system' with a 'communications controller' and 'data storage unit,'" which are "purely

functional and generic" components for "performing the basic calculation, storage, and transmission

functions required by the method claims." *Id.* at 2360.

Because the Supreme Court has made clear that claims untethered to any advance in science

or technology do not pass muster under § 101, *Alice Corp.*, 134 S. Ct. at 2359, Concaten's

implementation of abstract ideas on generic computer components does not add "significantly

more" as required for eligibility.

### B. The Patents Attempt to Preempt the Field of Coordinating Snow Maintenance Vehicles

The Supreme Court has noted that the primary focus under § 101 is on whether a patent

"would risk disproportionately tying up the use of the underlying ideas." *Alice Corp.*, 134 S. Ct. at

2354; *Mayo*, 132 S. Ct. at 1294. Thus, in assessing eligibility, "the underlying functional concern . . . is a relative one: how much future innovation is foreclosed relative to the contribution of the inventor." *Mayo*, 132 S. Ct. at 1303. Concaten believes that its patents read on broad swaths of technology that are vastly disproportionate to their generic technological implementation. (*See* Am. Compl. at ¶11-12). Because Concatent attempts to preempt an entire field, without contributing much or perhaps anything to the technology, Concaten's asserted patents are precisely the types of patents that should be invalidated for lack of subject matter eligibility.

In a recent decision from the Eastern District of Texas invalidating patents based on abstract ideas under § 101, Senior Federal Circuit Court Judge William Bryson, sitting by designation, explained the danger of allowing individuals to dress up abstract ideas "in the argot of invention" in a patent. *Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, 2014 WL 4364848, at *13 (E.D. Tex. Sept. 3, 2014). Although he was specifically describing the abstract ideas involved in business method patents, the court's explanation of the problem applies equally to the abstract ideas involved in software patents such as those at issue in this case.

> [S]uch patents, although frequently dressed up in the argot of invention, simply describe a problem, announce purely functional steps that purport to solve the problem, and recite standard computer operations to perform some of those steps. The principle flaw in these patents is that they do not contain an "inventive concept" that solves practical problems and ensures that the patent is directed to something "significantly more than" the ineligible abstract idea itself. As such, they represent little more than functional descriptions of objectives, rather than inventive solutions. In addition, because they describe the claimed methods in functional terms, they preempt any subsequent specific solution to the problem at issue.

*Id.* Concaten's patents have similarly announced what it perceives to be a problem in the field of collecting data from mobile service vehicles (i.e. little processing power in modems limiting the ability to receive and process dynamic instructions for those vehicles), and has merely announced functional steps to be performed by a generic computer that purport to solve that problem. In reality, Concaten's patents have merely identified objectives rather than inventive solutions.

The patents, as drafted and asserted by Concaten, are attempting to preempt the entire field of coordinating the actions of a snow maintenance vehicle fleet through the use of computers by claiming the idea of collecting data from the vehicles, transmitting it to a central server, and then sending back a map or instruction to the vehicle. The fact that Concaten has "limited" its claims to snow maintenance vehicles does not excuse the patents from the Supreme Court's concern about preemption. "[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice Corp.*, 134 S. Ct. at 2358; *see also Comcast*, 2014 WL 3542055, at *4 (rejecting argument that plaintiff avoided preemption by limiting claims to the field of telephony). Because Concaten's patents offer no inventive concept that meaningfully limits the scope of the abstract ideas it claims in the patents in suit, all five patents should be held to be invalid under § 101.

## CONCLUSION

AmeriTrak respectfully requests judgment on the pleadings invalidating all of the asserted claims and dismissing the patent infringement claims in Concaten's Amended Complaint.

Dated: December 23, 2014

**GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.**

*/s/Loren L. Hansen*
Dean C. Eyler
Loren L. Hansen
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 632-3000 Telephone
(612) 632-4444 Facsimile
dean.eyler@gpmlaw.com
loren.hansen@gpmlaw.com

**ATTORNEYS FOR AMERITRAK**

GP:3843825